UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOMINIC P.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C22-5723 JHC

**ORDER AFFIRMING AND DISMISSING THE CASE**

Plaintiff seeks review of the denial of child's benefits prior to February 1, 2017. Plaintiff contends the Administrative Law Judge ("ALJ") erred by finding that his mother was not misinformed by the agency. Dkt. # 15. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

# I
## BACKGROUND

Plaintiff is the son of a disability insurance benefits ("DIB") recipient. Admin. Record ("AR") 13, 33, 35, 37, 43–44, 79. Plaintiff's mother first applied for DIB on February 19, 2010, and was found disabled at the initial level on May 7, 2010. AR 13 (confirming finding), 31 (application). At the time of her application, she reported that she had a child under the age of 18. AR 32. On September 25, 2010, the agency wrote a letter to the mother, stating that before

ORDER AFFIRMING AND DISMISSING
THE CASE - 1

the agency could decide on her request for child's benefits, she needed to "file an application." AR 41. On March 27, 2018, the mother applied for child's benefits. AR 35. On April 7, 2018, the agency notified the mother that Plaintiff was entitled to monthly child's benefits beginning February 2017. AR 37–40.

On April 25, 2018, the mother wrote to the agency to appeal its decision, stating that Plaintiff was entitled to benefits going back to 2009, 12 months before she first started receiving DIB. AR 43–44. The agency responded on December 19, 2019, stating that under the regulations, benefits can be paid no earlier than 12 months before the month in which an application was filed. AR 45. The agency explained that since the mother filed the application for child's benefits on March 27, 2018, Plaintiff's benefits could begin no earlier than February 2017. *Id*. Plaintiff requested a hearing before an ALJ in February 2019 about the agency's decision. AR 47–50.

In a pre-hearing brief, Plaintiff's attorney alleged that the mother did not receive the September 2010 notice from the agency and that this constituted "misinformation" on the agency's part. AR 81. Plaintiff's counsel further argued that the agency's "failure to follow up with confirmation" of the mother's receipt of the September 2010 notice, as well as postal delivery problems, "directly resulted in her inability to file an application," and that therefore Plaintiff was entitled to a "deemed filing date." AR 82.

The ALJ held a hearing in March 2020, in which the mother testified that she did not receive the September 2010 notice, and that the area she lives in has "a lot of issues with [mail] theft" and mail delivery. AR 26–27. After the hearing, the ALJ issued a decision, finding Plaintiff unentitled to child benefits before February 1, 2017. AR 10–30. Plaintiff now seeks review of the ALJ's decision.

ORDER AFFIRMING AND DISMISSING
THE CASE - 2

## II
### THE ALJ'S DECISION

The ALJ determined that Plaintiff failed to show that the agency misinformed his mother about the child's benefits application process. AR 14–17. The ALJ explained that the agency did not provide incorrect, misleading, or incomplete information to Plaintiff's mother, and that it is not considered misinformation when a claimant does not receive notice. AR 15–16. The ALJ explained that even with the various letters from United States Postal Service (USPS) workers and Plaintiff's neighbors indicating mail theft and other delivery issues, which the mother submitted, there is no evidence showing the September 2010 notice specifically was not delivered to the mother. AR 16. Therefore, the ALJ concluded that the agency used the correct filing date, and that Plaintiff could only receive benefits up to 12 months right before that filing date. AR 17. Plaintiff requested review of the ALJ's decision, but because the Appeals Council denied the request, the ALJ's decision is the Commissioner's final decision. AR 1–4.

## III
### DISCUSSION

The Court may reverse an ALJ's decision only if it is legally erroneous or unsupported by substantial evidence of record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational. *Ford*, 950 F.3d at 1154. Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

    A.    Misinformation

Plaintiff contends the ALJ erred in finding that the agency did not misinform his mother

about the child's benefits application process. Dkt. # 15 at 2–3. Plaintiff argues that because his mother did not receive the September 2010 notice about when she could apply for child's benefits, he is entitled to an earlier filing date and benefits up to 12 months before she would have applied, had it not been for the misinformation. *See id*.

A claimant must file an application to become entitled to benefits. 20 C.F.R. § 404.603. A claimant is entitled to child's benefits on the earnings record of an insured person who is entitled to disability benefits if the claimant is the insured person's child. 20 C.F.R. § 404.350. If a claimant files an application after the first month the claimant could have been entitled to benefits, the claimant may receive benefits for up to 12 months "immediately before the month" the claimant applied. 20 C.F.R. § 404.621.

The agency "may establish an earlier filing date," that is, a "deemed filing date," if the agency provided misinformation about the claimant's eligibility, and that misinformation was the reason the application was not filed. 20 C.F.R. § 404.633. If a claimant can show that they were misinformed, the agency uses the date the agency provided the misinformation, or the date when claimant met all the requirements for their benefits, or whichever date is later. *Id*.

To establish a deemed filing date based on misinformation, these requirements must be satisfied:

> (1) The misinformation must have been provided to [the claimant] by one of the [agency's] employees while he or she was acting in his or her official capacity as [the agency's] employee . . . .
>
> (2) Misinformation is information which [the agency] consider[s] to be incorrect, misleading, or incomplete in view of the facts which [the claimant] gave to the employee, or of which the employee was aware or should have been aware, regarding [the claimant's] particular circumstances . . . . In addition, for [the agency] to find that the information [claimant] received was incomplete, the employee must have failed to provide [the claimant] with the appropriate, additional information which he or she would be required to provide in carrying out his or her official duties.

>  (3) The misinformation may have been provided to [the claimant] orally or in writing.
>
>  (4) The misinformation must have been provided to [the claimant] in response to a specific request by [the claimant] to [the agency] for information about [the claimant's] eligibility for benefits or the eligibility for benefits of the person referred to in paragraph (b)(2)(i) of this section for which [the claimant] w[as] considering filing an application.

20 C.F.R. § 404.633(c).

The Program Operations Manual Systems ("POMS")[1], which Plaintiff argues applies here and which the ALJ relied on in his decision, provides similar policies on what constitutes as misinformation: it is information that is "not correct, complete, or accurate or was misleading," provided orally in writing by an agency employee which would deter a claimant from applying. *See* POMS GN 00204.008.

Reviewing the entire record, the Court finds the ALJ reasonably found that the agency did not misinform Plaintiff's mother about the application process for child's benefits and that the agency used the correct filing date for Plaintiff's benefits. The ALJ noted that the written documentation provided by the agency throughout the process did not have incorrect, misleading, or incomplete information. *See* AR 15. The ALJ's finding is supported by substantial evidence. The record shows Plaintiff's mother was sent a letter in September 2010 stating that she must first apply for child's benefits before the agency could decide about her request for child's benefits. *See* AR 41. The letter also stated that if she applied within six months, the agency would use February 16, 2010, as the filing date as it was the "date of the original request." *Id*. The record also shows that the mother did not apply for child's benefits

---

[1] "The POMS does not have the force of law, but it is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

until March 27, 2018, and as a result, the agency determined Plaintiff was entitled to monthly child's benefits beginning February 2017. AR 35, 37, 45. The contents of all the written documentation the agency sent reflect the regulations and therefore contained no incorrect, misleading, or incomplete information. *See* 20 C.F.R. §§ 404.603 (a claimant "must file an application to become entitled to benefits"), 404.621 (if a claimant files an application after the first month the claimant could have been entitled to benefits, the claimant may receive for up to 12 months "immediately before the month" the claimant filed an application).

The ALJ also correctly noted that Plaintiff's allegation that his mother did not receive the September 2010 notice and his mother's misunderstanding about when she could have applied for child's benefits do not fall under the "misinformation" requirements of the regulations and the POMS. *See Wilson v. Comm'r, Soc. Sec. Admin.*, 141 F. App'x 584, 585 (9th Cir. 2005) ("[Plaintiff's] possible misunderstanding . . . is not necessarily the same as being provided with misinformation and does not entitle her to an earlier deemed filing date.").

Additionally, the ALJ could reasonably find the testimony provided by the mother, the USPS workers, and Plaintiff's neighbors about mail delivery issues in his neighborhood unpersuasive. The ALJ is "free to disregard" statements about alleged misinformation because they "lacked specificity on crucial details." *See id.* at 585; *cf. also* 20 C.F.R. § 404.633(d)(2) ("We will not find that we gave you misinformation, however, based solely on your statements."). Here, Plaintiff failed to provide evidence that delivery issues affected the September 2010 notice and, as the ALJ noted, testimony about possible delivery issues does not necessarily establish that the mother did not receive the September 2010 notice. AR 16. As also noted by the ALJ, Plaintiff's allegation of mail delivery problems is undermined by the fact that the mother has had other documents mailed to her address, yet she could respond to them,

showing her receipt of those documents. *See* AR 17 (citing AR 45–46 (a letter from the agency stating that if Plaintiff's mother disagreed with the decision about her son's benefits, she can request a hearing before an ALJ), 47 (Plaintiff's mother requesting a hearing before an ALJ)). Accordingly, the Court finds the ALJ reasonably determined that Plaintiff's mother was not misinformed, that the agency used the correct filing date, and that Plaintiff was not entitled to benefits before February 2017.

B.  Due Process

Plaintiff also argues the ALJ erred in finding that the agency had no duty to confirm receipt of the September 2010 notice and that the agency's choice to "adopt a method of notice that does not ensure notice nor even provide evidence that notice was actually sent" results in a violation of his due process. Dkt. # 15 at 2–3.

But Plaintiff fails to point to any authority stating that the agency has a duty to confirm that a claimant received notice about the applications they may have inquired about. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error). By contrast, there is a circumstance when the agency must confirm a claimant's receipt of a notice—after a claimant requests a hearing before an ALJ, the agency sends a notice of hearing that includes a form the claimant must send back to confirm they received the notice. *See* 20 C.F.R. § 404.938 (c). The regulations state that if a claimant or their representative fails to send back the acknowledgment receipt, the agency will "attempt to contact" the claimant for an explanation, and if the claimant informs the agency that they did not receive the notice of hearing, the agency will send an amended notice by certified mail. *See id*. But there are no regulations stating the agency must confirm a claimant's receipt of the notice at

ORDER AFFIRMING AND DISMISSING
THE CASE - 7

issue here.  Accordingly, the Court rejects Plaintiff's argument.

## IV
## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 12th day of October, 2023.

John H. Chun
United States District Judge